## BUZARD v. HELVERING.

### DUSENBURY v. SAME.

#### Nos. 6340, 6341.

United States Court of Appeals for the District of Columbia.

Argued March 7, 1935.

Decided April 1, 1935.

Abram R. Serven, of Washington, D. C., and James P. Quigley, of Olean, N. Y., for petitioners.

Robert H. Jackson, of Washington, D. C., Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Ellis N. Slack, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

The Navarro Lumber Company was a California corporation. It filed its income tax return for 1919 on March 15, 1920, and for 1920 on March 8, 1921. In 1922 it filed an application for voluntary dissolution in the superior court of the county of its principal place of business, and in the same year a decree was entered, dissolving the corporation and appointing its three directors

(two of whom are the petitioners herein) to distribute the assets to its stockholders.

The period of limitation for assessment against the lumber company for 1919 expired March 15, 1925, and for 1920 on March 8, 1926; and on February 10, 1925 (within the limitations period), the Commissioner mailed notice of deficiencies for the years 1919 and 1920 to the lumber company at its San Francisco address; and within the allowable 60-day period thereafter a petition for redetermination was filed with the Board of Tax Appeals. The petition was signed, "For Navarro Lumber Company, by John J. Heberle." Heberle, presumably, is a New York lawyer, and in signing the petition he was acting pursuant to a power of attorney to him, of date November 9, 1923, executed by the three trustees. On April 25, 1925, an additional or corrected petition, signed and verified by the three trustees personally, was filed with the Board. In this petition the trustees say:

"We desire to and do confirm all of the said acts of our said attorneys, and we verify and adopt as our own act and deed, the said petition filed with the U. S. Board of Tax Appeals, on April 11, 1925."

Attached to the petition was a copy of the power of attorney to Heberle, the decree of the California court dissolving the corporation and appointing trustees, a reference and quotation from section 400 of the Civil Code of California showing that the trustees had authority, under the provisions of that statute, to do the acts and things they were then doing.

On February 13, 1928, the Board promulgated its findings of fact and opinion, and entered a deficiency order against the lumber company for 1919 and 1920; and on January 17, 1929, the Commissioner mailed to each of the petitioners a notice stating:

"Under the provisions of Section 280 of the Revenue Act of 1926, there is proposed for assessment against you the amount of $53,086.18 plus any accrued penalty and interest representing your liability as a transferee of the assets of the Navarro Lumber Company for outstanding tax assessed against said company for the years 1919 and 1920."

Petitioners appealed to the Board of Tax Appeals for a redetermination of their liability as transferees under section 280 (Revenue Act of 1926, 26 USCA § 1069 and note). The basis of the petition was that the assessment proposed by the Commission-er against petitioners as transferees was barred when he mailed his notices (January 17, 1929). In this proceeding a stipulation was filed, as follows:

"The Board may find and determine * * * that there are deficiencies with respect to the liability of Navarro Lumber Company * * * for the taxable years 1919 and 1920 in the respective amounts of $13,568.75 and $17,630.97, saving and reserving to the petitioners * * * such right or rights as they may have under the law and the evidence, upon their pleas that the Statute of Limitations has run against the assessment. * * *"

The stipulation also recited it was agreed that petitioner Dusenbury received on August 7, 1922, distributions in liquidation of the lumber company in the sum of $26,947.70, and that petitioner Buzard received, at the same time, sums in excess of the total amount of the stipulated tax.

On February 1, 1934, the Board (five members dissenting) decided against petitioners, holding Buzard and Dusenbury liable, as transferees, in the amount of $31,199.72 (the stipulated amount), "plus interest thereon from February 26, 1926, to the date of assessment at the rate of 6% per annum."

Petitioners have appealed to this court, and assign the following grounds of error: First, that the Navarro Lumber Company is *the taxpayer* that incurred the tax for 1919 and 1920 on which the proposed liability of the petitioners is founded; second, that Navarro Lumber Company was totally dissolved in 1922 and did not execute or file the appeal to the Board in 1925, on which the Commissioner relies for an extension of the periods of limitation for assessments against that company; third, that the Commissioner has not shown that the lumber company ever extended the period of limitations beyond the statutory period—March 15, 1925, and March 8, 1926, respectively; fourth, that the notices of liability mailed to these petitioners on January 17, 1929, were mailed more than one year later than either of those dates, and that the assessments proposed in them were therefore barred when the notices were mailed; and, fifth, that the Board erred when it ordered for each petitioner a liability, *plus interest.*

Section 280 of the Revenue Act of 1926 authorizes the assessment of the liability of a transferee of property of a taxpayer, in respect to the latter's tax; and provides that this liability shall be assessed within

one year after the expiration of the period of limitation for assessment of tax against the taxpayer; and further provides that when the taxpayer was a corporation, but has terminated its existence, the period of limitation for assessment against it shall be the period which would be in effect if it were still in existence. The provisions of the act apply to any tax imposed by that (1926) or any prior income tax act.

From what has been said, it will be seen that the foundation of the appeals is that the charter of the lumber company having been withdrawn in 1922, the petition filed in its behalf in 1925 by the trustee was of no effect and did not extend the periods of limitation for assessments against the corporation or against petitioners as distributees of the corporation.

On the other hand, it is argued, if the appeal was properly filed and binding on the corporation, admittedly its filing would stop the running of the limitation periods until the final decision of the Board; and, in that case, notice to petitioners within "one year after the expiration of the period of limitation for assessment against the taxpayer" would bind them and carry over to them the tax liability of the corporation.

Petitioners tell us that, though an appeal was filed in behalf of the lumber company, it was not filed *by* the lumber company (the taxpayer) and therefore did not extend, as against petitioners or the company, the periods of limitation. To sustain this, they say that as the lumber company was dissolved in the year 1922 it had ceased to exist from that moment, and under the law of the state of its incorporation it was legally dead and incapable of taking any action which would legally bind either itself or petitioners as transferees of its property.

Petitioners rely on Crossman v. Vivienda Water Co., 150 Cal. 575, 89 P. 335, 337. That was an action in debt commenced against a dissolved corporation and certain persons alleged to be stockholders. Summons was served on the president of the corporation; a demurrer was filed and overruled; and an answer was then filed by the stockholder defendants in which they denied liability on the part of the alleged corporation and also denied the existence of the corporation, alleging it had been voluntarily dissolved under the California statute. No pleading or answer was filed by the corporation, and a judgment against it was taken by default. On appeal, the judgment was set aside by the Supreme Court of Cali-

fornia on the ground that it had been entered by the clerk without an order of court. Thereupon the plaintiff dismissed the action as to the individual defendants, and an order was made by the trial court appointing a referee to take an accounting between plaintiff and the corporation. On the basis of the referee's report, judgment was entered in favor of plaintiff against the corporation. Subsequently a proceeding was begun against the stockholders individually, alleging the recovery of the judgment against the corporation and its bankruptcy. The stockholders appeared and moved to set aside the judgment upon the ground that the court had no jurisdiction to enter the same for the reason that prior to the institution of the suit the corporation had been dissolved and had ceased to exist. This motion prevailed, and on appeal the Supreme Court of California said:

"It is settled beyond question that, except as otherwise provided by statute, the effect of the dissolution of a corporation is to terminate its existence as a legal entity, and render it incapable of suing or being sued as a corporate body or in its corporate name. It is dead, and can no more be proceeded against as an existing corporation than could a natural person after his death. There is no one who can appear or act for it, and all actions pending against it are abated, and any judgment attempted to be given against it is void. As to this, all the textwriters agree, and their statement is supported by an overwhelming weight of authority. See 5 Thompson on Corp. §§ 6721, 6722, 6723; Clark & Marshall on Private Corporations, §§ 322, 329; Angell & Ames on Corp. § 195; 2 Morawetz on Corp. § 1031; Vol. 10 Cyc. p. 1316; 7 Am. & Eng. Ency. of Law, p. 854; Pendleton v. Russell, 144 U. S. 640, 12 S. Ct. 743, 36 L. Ed. 574; First National Bank v. Colby, 21 Wall. 609, 22 L. Ed. 687; Mumma v. Potomac Co., supra [8 Pet. 281, 8 L. Ed. 945]; Sturges v. Vanderbilt, 73 N. Y. 384; Rodgers v. Adriatic, Etc., Co., 148 N. Y. [34] 38, 42 N. E. 515. There is no statute of this state that authorizes the commencement or continuance of an action against the corporation after its legal death. We have no statute similar to that of several states, providing that in the event of the dissolution of a corporation its existence shall be continued either indefinitely or for a specified time for the settlement of its affairs. Statutes similar to our section 400, Civ. Code, above quoted, do not have the effect of continuing the existence of the corporation as cestui que trust,

or otherwise, so as to render it capable of defending actions in its corporate name. Thompson on Corp. § 6739; Clark & Marshall on Private Corporations, § 333; Sturges v. Vanderbilt, supra [73 N. Y. 384]. If section 385, Code Civ. Proc., providing that an action does not abate by the death or any disability of a party, if the cause of action survives, is applicable to the case of a corporation, it does not authorize the continuance of the action against the corporation itself, but allows the action to be continued only against the 'representative or successor in interest,' brought in on motion. McCulloch v. Norwood, 58 N. Y. 562, 568. See, also, Judson v. Love, 35 Cal. 463. There being no statute which can be held to modify the general rule, it would seem that the judgment in this case was as much of a nullity as if it had been given against a dead natural person, and that plaintiff's remedy, after the dissolution of this corporation was against the directors who continued such at the time of dissolution as trustees, and the stockholders. Sturges v. Vanderbilt, supra [73 N. Y. 384]."

See, also, Van Landingham v. United Tuna Packers, 189 Cal. 353, 208 P. 973; Hogan v. Superior Court, 74 Cal. App. 704, 241 P. 584; Panzer-Hamilton Co. v. Bray, 96 Cal. App. 460, 274 P. 769, 770; Smith v. Lewis (Cal. Sup.) 287 P. 470, 472; Id., 211 Cal. 294, 295 P. 37, 39.

Placing themselves squarely on the California law, as interpreted and pronounced by the Supreme Court of California in the Crossman Case, petitioners say that, since the Navarro Lumber Company had been legally dissolved in 1922, it could not thereafter be served with process, could not appear, and could not itself admit anything, nor authorize any one to do so for it. That, in these circumstances, all that was done in its behalf by its trustees in the matter of the appeal to the Board of Tax Appeals was a nullity, and therefore had no effect, and could have no effect, in extending the periods of limitations. If the premise be admitted, and if petitioners' right to challenge the binding effect of the appeal be likewise admitted, the conclusion which petitioners urge must follow because, concededly, the notices of the Commissioner to petitioners of the assessments against them, as transferees, were not mailed until January 17, 1929, and that date was considerably more than one year after the expiration of the original periods of limitation for assessment of the tax against their transferor, the lumber company. But, in our view, petitioners' premise is not sustainable on either of two grounds.

First, as we have already shown, the Commissioner's notice of deficiencies to the lumber company was dated February 10, 1925. That was within the five-year period. Its effect, therefore, was to fix and determine the company's tax liability for the years 1919 and 1920 which, unless appealed from to the Board of Tax Appeals, would at the expiration of sixty days become final and binding. Within the sixty-day period a petition for a redetermination of the deficiencies was filed with the Board. It was entitled, "Appeal of Navarro Lumber Company," but it was signed for the company by the three trustees, who, in the dissolution decree, were directed to wind up its affairs and distribute its assets.

In taking the appeal, petitioners set out the authority on which they acted. They speak of themselves as the trustees of the lumber company "now in process of liquidation" and point to the statute of California for their authority to act. By reference to that statute (Civil Code, § 400 as amended by St. Cal. 1921, c. 383, p. 574) we find that they have power to settle the affairs of the corporation, collect and pay outstanding debts, to sue and to be sued in relation to the debts and property of the corporation, and that they shall be jointly and severally liable to creditors to the extent of any property that shall come into their hands. It was in recognition of these duties and responsibilities that they filed the appeal. We think it cannot be urged that they were without authority, or the Board without jurisdiction. Indeed, we do not understand counsel to go that far, but rather, to insist that, because the appeal was taken in the name of the lumber company, and the trustees were not themselves substituted (after the passage of the 1926 act) formally by name in the place and stead of the corporation, the appeal was ineffective and the decision rendered thereon wholly void. Counsel say the three trustees compose "an indivisible fiduciary," a single taxpayer under present revenue acts, but that under the 1924 act in effect when the appeal was filed, the fiduciary entity which they composed could not invoke the jurisdiction of the Board of Tax Appeals by appealing from the Commissioner's notice. In the same breath they say the lumber company was dead and had no rights, so that the result of the situation when the appeal was taken was that there

was nobody, natural or artificial, capable of contesting the Commissioner's determination, or availing of the provisions of law for a redetermination of the Commissioner's assessment. We have been cited no authority for this position, and we can find none; and we should be slow to follow any which might point in that direction. But however this may be, the 1926 act, § 283 (b), 26 US CA § 1064 (b) does provide that, in any appeal then pending, the Board shall have jurisdiction; and so, on the one ground or the other, we are satisfied that when petitioners as trustees appealed to the Board, and the Board accepted jurisdiction, the powers of the Board, on the one hand, and the rights and privileges of the petitioners, on the other, were not prejudiced by the fact that the appeal was entitled in the name of the lumber company, rather than in the names of the trustees for the lumber company.

The Board of Tax Appeals is not a court and, though it may exercise judicial powers, it is essentially an administrative commission; and on appeals from its decisions, the statute admonishes us to affirm, modify, or reverse—as justice may require. The appeal from the deficiency notice, we think, was an appeal by the trustees of the lumber company, however it may have been styled in the hearings or in the pleadings. The deficiencies in tax were debts of the lumber company. If the assessment was valid, it was payable out of the assets of the lumber company. It was the duty of the trustees to preserve the assets and pay the debts, and this duty involved contesting the imposition of the additional tax. There never was the slightest doubt in the trustees' minds that this was their duty, and it is perfectly clear that in taking the appeal to the Board they considered they were performing that duty. And we think it is also clear that the decision of the Board, sustaining the deficiency notice of the Commissioner, was no more or less than an ascertainment of the validity of the debt of the lumber company for which, under the tax statutes, petitioners as trustees were liable, and bound to account under the tax laws and under the California statutes. It is an established principle that one who prosecutes a suit in the name of another to establish and protect his own rights, or who assists in the prosecution of an action in aid of some interest of his own, is bound by the judgment. Souffront v. La Compagnie, etc., 217 U. S. 475, 487, 30 S. Ct. 608, 54 L. Ed. 846.

In this view, we hold (1) that the Commissioner's deficiency notice of February 10, 1925, was in time; (2) that the petition filed April 11, 1925, by the trustees for a redetermination of the deficiencies, however styled, was in legal effect an appeal by the trustees appointed to administer the affairs of the dissolved corporation; (3) that the Board of Tax Appeals properly took jurisdiction of the petition; (4) that the effect of the petition was to suspend the running of the statute against the lumber company and its trustees until the final decision of the Board; (5) that the deficiency notices against petitioners as transferees, mailed January 17, 1929, were mailed within one year after the final decision of the Board (February 13, 1928) and were therefore within the statutory period.

■ We have said there is still another ground on which the Board's conclusion should be sustained. We shall discuss it briefly. Petitioners were the principal stockholders of Navarro Lumber Company. They were also directors of that corporation. In these capacities they signed the application for dissolution of the corporation, and by an order of court they and another were appointed trustees of the creditors and stockholders of the dissolved corporation with power to settle the affairs of the corporation, pay its debts, and distribute its assets. Pursuant to this power, in August, 1922, Dusenbury received $26,947.70, and Buzard received sums in excess of the total amount of the assessed tax. We think we are safe in assuming that together they received all of the distributive assets of the corporation. On this assumption, they were jointly and severally liable to the United States (to the extent of the amounts received by them) for all amounts of taxes which might be thereafter legally assessed against the corporation. This liability accrued not only under the federal tax laws but under the California laws. They were, therefore, the parties solely in interest in resisting claims against the corporation. If, therefore, on February 10, 1925, when the Commissioner mailed the notice of deficiencies to the lumber company, they had taken no action, but allowed the sixty-day period to expire, they would have been liable, at the suit of the United States, to respond to the full amount of the assessed taxes. It was, therefore, solely in their interests that the petition for redetermination should be filed with the Board. They did file such petition and prosecuted it to final decision.

Thereafter, and when assessed by the Commissioner as transferees under the provisions of section 280 (a) of the 1926 act, 26 USCA §1069 (a), they individually petitioned for redetermination of their individual liability, grounding their appeals on the statute of limitations, and that question we have disposed of.

But if we had concluded differently on that question, we should nevertheless be constrained to hold that it is not open to them now to raise the question of limitations. Petitioners, from the moment of the dissolution of the lumber company, were the real parties in interest in all the proceedings before the Commissioner and the Board. They sought and had the benefit of a hearing and reconsideration of the tax claim. Thus they secured the delay on which their defense is built. To permit them now to continue to hold the assets of the corporation and to say that that entire proceeding was a nullity, including the notices to petitioners as transferees, because the corporation, being dead, was without legal right to challenge the tax, would be to allow petitioners to repudiate their own voluntary appearance in the corporation's behalf, to deny their own pleadings, and to take inconsistent positions in the same litigation; and this should not be permitted either to taxpayer or government in this case or any other. We think it clear that petitioners as transferees are now estopped to deny the regularity of the appeal which they caused to be filed with the Board.

This leaves only for consideration the question whether interest may properly be included on the amounts stipulated to be due. To decide that question, it is unfortunately necessary to repeat some of the facts. On February 10, 1925, the Commissioner mailed a notice to the lumber company, indicating a deficiency in tax for the year 1919 of $13,568.75, and for 1920, $39,517.43. The two amounts aggregate $53,086.18. Within the sixty-day period thereafter petitioners, as trustees, applied to the Board for redetermination of the deficiencies. On December 10, 1925, while the appeal was pending, the Commissioner made a "jeopardy assessment" of the deficiency of $13,568.75 for 1919. On February 27, 1928, the Board entered an order of redetermination for a deficiency of $13,563.75 for 1919 and $39,-

517.43 for 1920, and on January 17, 1929, the Commissioner mailed to each of the petitioners a notice stating:

"Under the provisions of section 280 of the Revenue Act of 1926, there is proposed for assessment against you the amount of $53,086.18 plus any accrued penalty and interest representing your liability as a transferee of the assets of the Navarro Lumber Company for outstanding tax assessed against said company for the years 1919 and 1920."

In the subsequent petitions to the Board (petitioners-transferees) it was stipulated that the correct deficiencies for the taxable years 1919 and 1920 were $13,568.75 and $17,630.97, respectively.

Petitioners' position here is that these conceded deficiencies represented not only the amount of the original tax but the tax plus interest, and were intended to determine finally, against both respondent and petitioners, that the total sum due from the company was $31,199.72. Petitioners, moreover, insist that there is no statutory authority for the assessment of interest on the liability of transferees. This is not our view of the law. Section 280 (a) (1) of the act of 1926, 26 USCA §1069 (a) (1), imposes interest on the liability of a transferee of property of a taxpayer, and section 283 (d), 26 USCA §1064 (d), provides that in the case of a tax assessment imposed by acts prior to November 23, 1921, interest shall be collected, as a part of the tax. There is certainly nothing in the stipulation itself which shows that interest was included in the agreed sum and, in this view, interest was properly chargeable from February 26, 1926, the effective date of the Revenue Act of 1926.

Inasmuch, however, as it appears that the petitioner Dusenbury (No. 6341) received only the sum of $26,947.70 as a transferee of the corporation, the order of the Board of Tax Appeals, requiring him to pay $31,199.72, will be corrected to the sum received by him as transferee, with interest from February 26, 1926. The transferees' liability is several, and therefore each is responsible, to the extent of benefits, for the entire tax; but the payment of the entire tax by one, or both jointly, will discharge the liability.

Modified and affirmed.